SEABOARD AIR LINE RAILWAY COMPANY, a corporation, *Plaintiff in Error,* v. PAUL S. MAIGE, *Defendant in Error.*

147 So. 215.

Division B.

Opinion filed March 23, 1933.

*W. J. Oven* and *James Messer, Jr.,* for Plaintiff in Error; *W. May Walker,* for Defendant.

BUFORD, J.—In this case judgment was in favor of the plaintiff in a suit for the value of one bull alleged to have been killed by a train operated on the defendant's railway. The defendant sued out writ of error.

The declaration was in one count alleging negligence in two aspects. The first was that the animal was killed by the train because of the negligent operation thereof. The second was that the animal was killed on the railroad track by reason of the failure of defendant to comply with its statutory duty to maintain a sufficient fence at that place to prevent the intrusion of livestock on the right-of-way. On the trial the jury was charged to state in the verdict, if the verdict should be for the plaintiff, the aspects on which such verdict was based, complying therewith, the jury in its verdict found that the defendant was liable because of failure to sufficiently fence its right-of-way. This finding of the jury eliminates any question of law which might be involved in a case where damage is recovered for

injury resulting from the negligent operation of a railroad train. The charges given by the court with reference to the effect of the provisions of Section 4596 R. G. S., 6679 C. G. L., in cases of this character if erroneous must be held harmless because the verdict of the jury eliminated recovery on that aspect of the case.

The defendant in the court below defended its liability under the second aspect of the declaration upon a plea,

"That said point or station is now and has been for many years past operated and maintained on defendant's said line of railroad in Leon County, Florida, for the public convenience and necessity for and of those entraining and detraining at said point or station, and for the receipt and delivery of freight consigned to or shipped from said point or station by patrons of this defendant and its connecting carriers, intrastate and interstate commerce. That in the maintenance and operation of said station and the handling of passengers entraining and detraining thereat, and the receipt and delivery of freight consigned to or received from patrons of the defendant, receiving or shipping freight at or from said point or station, it became necessary to install and maintain a side or switch track at said point or station, to the end that one train might pass along the said line of railroad while another stopped at said point or station for the purpose of unloading or receiving passengers or freight, and so that cars might be placed there for loading by the public requiring cars to be placed at said point or station, or for the purpose of unloading where consigned to patrons at said point or station, or placed there upon demand for the purpose of being loaded, and at the same time permit the operation and passage of other trains moving east and west as between Jacksonville, Florida, and River Junction, Florida; the two terminals of this branch

of defendant's railroad, and as between intermediate points. That the said switch or side track was and is one of only a reasonable length, having due regard for the volume of business handled along the line of defendant's said railroad, and in connection therewith, having due regard for the safety of passengers and crews on defendant's said trains and the transportation over said line of persons and property with reasonable safety and dispatch. That the said station and side track or switch-track thereat was so being maintained at the time said bull was killed. That the said bull was killed within the switching limits of said station (that is to say, between the switch points of the side or switching track where it branches from the main line at the east and west sides of said point or station), and was killed through no fault or negligence on the part of this defendant, its agents or servants."

The evidence failed to support the plea that any side track or switch was, at the time the animal was killed, or ever had been, maintained at that place. The evidence did show that there was a platform about from 250 to 300 feet west of the place where the animal was killed which was known as Ocklocknee Station, but the evidence entirely failed to show that there then existed, or ever had existed, any public necessity for dispensing with the statutory requirement of a sufficient fence on each side of the railroad track to exclude cattle and other domestic animals therefrom. The evidence showed that for a space of something like 375 feet, a part being on each side of such platform, no fence had been maintained.

The cases cited by the plaintiff in error are not applicable to the facts in the case at bar on this point.

In Pa. R. R. Co. v. Mitchell, 124 Ind. 472, 24 N. E. 1065, the Supreme Court of Indiana said:

"It is abundantly settled that a railroad company is not liable for injuries to animals that enter upon its tracks at places where to maintain fences would interfere with the discharge of its duty to the public, or with the rights of the public in the use of the highway, or in doing business with the company, nor at any place where fences and connecting cattle-guards would make the running and handling of trains, or the necessary and proper switching of cars, more hazardous to its employees. When animals enter upon railroad grounds at such places and are killed within limits that can not and are not required to be fenced the company is not liable. Cincinnati etc. R. R. Co. v. Jones, 11 Inda. 259, and cases cited. Railroad companies cannot be required to erect and maintain fences along unenclosed and unimproved lands, nor in the platted portions of cities, towns and villages, but they are, nevertheless, liable for injury to animals that enter upon their tracks at such places, in case the track was not, but might have been, securely fenced without interfering with the discharge of its duty to the public or without increasing the danger to its employees in the discharge of their duties. These are conceded propositions about which there is no dispute. It is conceded that the tracks were not fenced at the place where the animals entered, nor where they were killed. The contention is as to the liability of the company notwithstanding the absence of the fence, the insistence on the one hand being, that a fence and connecting cattle-pits could not have been maintained without subjecting the trainmen of the company to additional perils; while it is contended on the other hand that the evidence fairly sustains the opposite conclusion.

"We concede that the utmost liability should be extended to railroad companies where fences and cattle-guards are

dispensed with out of considerations of safety for train-men or employees, or for the safety, convenience or welfare of the public. The judgment and discretion of officers and agents should not be coerced so as to put human life and limb in jeopardy in order to avoid pecuniary liability for animals killed. Notwithstanding this, after an attentive consideration of the evidence and arguments in the present case, we find ourselves unable to disturb the verdict of the jury."

In that case the verdict was for the plaintiff in the court below and there was conflict in the evidence as to the existence of the necessity for the unfenced condition of the railroad at the place. In this case all that is shown is that there is a platform called a station some 250 or 300 feet west of where the animal was killed; that passenger train schedules show the times at which trains pass that station. There is evidence that one train running each day was allowed to stop on being flagged at that station. There is also evidence that freight had sometimes been delivered and received there, but there is no showing whatever that the business of a common carrier transacted by the railroad company at that place required the right-of-way to be left unfenced. There is no showing that all the business transacted by the railroad company there and all the work required to be done by its trains could not have been performed as safely and effectively with as without the existence of the fence as required by statute.

We hold with the Indiana case above quoted from, that a railroad company is not liable for injuries to animals that enter upon its track at places where to maintain fences would interfere with the discharge of its duty to the public, or with the rights of the public in the use of the highway, or in doing business with the company, nor at any places

where fences and connecting cattle-guards would make the running and handling of trains or the necessary and proper switching of cars more hazardous to its employees. But, before a railroad company can defend its failure to maintain fences as required by statute there must exist a condition from which the conclusion may reasonably be drawn that the existence of a fence would so affect the railroad company or the public, or both, and the existence or non-existence of such condition is a question of fact to be determined by a jury. In other words, if the condition exists, then the railroad company may exercise its right to eliminate the hazard which would be occasioned by a fence insofar as its employees are concerned and to accommodate the necessities of the public, but unless it is shown that the railroad company is required to perform, and does perform, services of a common carrier at such place which would reasonably warrant it in exercising its right to so disregard the statutory requirement to effectuate the safety of its employees and to conveniently serve the public in its common carrier capacity at that place it has no right to disregard its statutory duty to maintain fences on each side of its right-of-way.

The pleadings and the evidence show that the place where the animal was killed was not within an area wherein the railroad company was not required by statute to fence its tracks. In such case it was incumbent upon the railroad company to show that it had the right of non-compliance with the statute *ex necessitate*.

The record in this case fails to show the existence of that condition.

For the reasons stated, the judgment should be affirmed and it is so ordered.

Affirmed.

Davis, C. J., and Whitfield, Terrell and Brown, J. J., concur.

Davis, C. J. (Concurring).—Fencing of railroad tracks is not required by our statute to protect the animals who may stray thereon, but is required to protect the passengers and employees on trains, which might be derailed if a collision with an animal straying on the tracks should occur.

The statutory requirement that a railroad company shall pay for all animals killed on its unfenced tracks, whether it negligently kills them or not, is merely a penalty imposed as a means of enforcing the statutory duty resting upon the railroad company to fence its tracks to protect its trains from collision and possible injuries to its passengers. Therefore fencing is not excused except at such places as by reason of their nature and situation, are such places as where animals may not be reasonably expected to be roaming, such as yards, station grounds and the like. On no other theory could the courts have read into an unambiguous statute of this kind any exception at all as to the duty to fence.

Only at place where animals need not be reasonably anticipated, such as at station grounds or other such places where its tracks run, is the railroad company excused from its statutory duty to fence its tracks, since as I have pointed out, the protection intended by the fencing requirement is for the people, not the animals.

Payment for any animals killed on unfenced tracks being merely a penalty imposed on the railroad company to coerce fencing, a requirement which might be made effective in no other way as certain and as efficient as by the imposition of this kind of penalty, the conclusion reached is that a railroad company may defend against claims against it for the non-negligent killing of animals at places where con-

ditions show that the fencing requirement would not serve the purpose of the statute by which fencing is made necessary to avoid liability for the penalty.

The foregoing view also sustains the constitutionality of that part of the statute providing for recovery of attorney's fees as part of the statutory penalty when it is not promptly paid.