ATLANTIC COAST LINE RAILROAD CO. v. D. W. MANNING.

152 So. 735.
Opinion Filed February 19, 1934.

*Doggett & Doggett,* for Plaintiff in Error;
*Knight & Knight,* for Defendant in Error.

PER CURIAM.—The statutes provides that:

"Any railroad company * * * operating" a "railroad in this State who has failed to erect and maintain fences along the sides of its railroad track as is provided" by statute, "shall be liable for the full cash value of any and all cattle * * * or other * * * live stock which may be killed or injured by any train, engine or cars upon the track of the said railroad, if the claim be paid within sixty days after the presentation of the claim for damages by the owner of the killed or injured live stock or his agent or attorney, whether

the same was killed or injured negligently or not: Provided, that upon the failure to pay the claim within sixty days after its presentation the said railroad companies, person or persons owning or operating said roads not fenced as herein provided shall be liable for double the value of the animal killed or injured, and for attorney's fees." Sec. 6672 (4589), C. G. L.

The declaration alleges that on March 22, 1930, the "Plaintiff was the owner of a certain cow of the value of $80.00, and that the said defendant by and through the running and operating of its engines and cars upon and over said railroad ran against and over the said stock of plaintiff and killed and destroyed the same, on or about the 22nd day of March, 1930, in Baker County, State of Florida; and that the place where the said stock was killed as aforesaid, was not within the corporate limits of any incorporated city or town, nor within one mile of a city of more than ten thousand inhabitants, nor at any road crossing, and that on either or each side of the said railroad track at place where the said stock was killed, as aforesaid, defendant had then and there failed to erect and maintain fences, and had failed to construct and maintain cattle guards sufficient to prevent said stock from getting on said railroad track, and that the killing of said stock by defendant, as aforesaid, was occasioned by the defendant failing to construct and maintain said fences and cattle guards in the manner as required by law.

"Plaintiff further says that more than sixty days prior to the bringing of this suit, that he served said defendant with notice in writing of the killing of said stock and the value of same, and payment was demanded therein of said value, but that the same has not been paid, or any part thereof, and by reason of the non-payment of the same plaintiff was

compelled to employ and did employ the undersigned attorney-at-law to bring this suit, and now claims the value of said stock, together with double damages, reasonable attorney's fees and costs of court."

A demurrer to the declaration was overruled. Defendant pleaded:

"1. That it is not guilty.

"2. That the animal claimed to have been killed, was killed, if killed at all, at a depot and freight and passenger station on the main line and sidetracks and/or passing tracks of the defendant, which depot and passenger and freight station, sidetracks and passing track was, and is used as a regular place for the stopping of trains of the defendant for the receipt of and the discharge of passengers and freight, and was and is so used by the defendant in its business as a common carrier, and on that account a fence and cattle guards maintained at that point would interfere with and prevent the use of said station and tracks by the public for the purpose of loading and discharging freight and passengers.

"3. That the place where said animal was killed, was and is a place where the defendant is not required to fence its tracks and maintain cattle guards, and at the time said animal was killed and at said place, this defendant was by and through its agents, servants and employees, exercising ordinary and reasonable care in the operation of its engines, trains and cars.

"4. That prior to the expiration of the sixty days allowed by law in which to make settlement of this claim, and before suit was started, this defendant offered the plaintiff the sum of $25.00 in full settlement of said claim, which was the full cash value of said animal."

Verdict was rendered for the plaintiff, and the following judgment was entered thereon:

"This cause coming on for trial and the respective parties each having announced by counsel that they were ready for trial, and a jury of six good and lawful men, to-wit: R. B. Warren, and five others, having been selected, chosen and duly sworn as provided by law, and after hearing the evidence and charge of the court, returned into court with the following verdict 'Lake Butler, Fla., May 26th, 1931. D. W. Manning, Plaintiff, v. Atlantic Coast Line Railroad Company, a corporation, Defendant. We, the jury, find for the plaintiff, D. W. Manning, and assess his damages at $80.00. So say we all. R. B. Warren, Foreman.'

"It appearing to the court from the files that the value placed upon the stock sued for was $80.00, and the plaintiff under the law is entitled to double damages and reasonable attorney's fees, the court then heard testimony as to reasonable fee to be allowed the plaintiff for the services of his attorneys, and finding therefrom that $50.00 would be a reasonable sum to allow the plaintiff for the services of his attorneys;

"It is, therefore, considered by the court that the plaintiff, D. W. Manning, do have and recover of and from the defendant Atlantic Coast Line Railroad Company, a corporation, the sum of One Hundred Sixty Dollars as his damages together with the further sum of $50.00 as his reasonable attorney's fees, as well as cost of court herein taxed at $77.78, for all of which let execution issue."

The defendant took writ of error.

The statute requires the railroad company to "maintain fences on both sides of its railroad suitable and sufficient to prevent the intrusion of cattle * * * upon its track." The declaration alleges that on either side of the said railroad

track at place where the said stock was killed, defendant had then and there failed to erect and maintain fences, and had failed to construct and maintain cattle guards sufficient to prevent said stock from getting on said railroad track."

A ground of demurrer to the declaration that it is not alleged that the place where the animal *entered or came* upon the tracks, defendant had failed to erect and maintain fences and cattle guards, was properly overruled since such an allegation was not essential to state a cause of action under the statute. It does not appear that a motion was made to require a more definite statement of any allegation of the declaration. See J. F. & K. W. Ry. v. Harris, 33 Fla. 217, 14 So. 726, 39 Am. St. Rep. 127.

A witness for plaintiff testified:

"I know that on or about the 22nd of March of last year, there was a cow killed by the Atlantic Coast Line train, which belonged to my brother, Mr. D. W. Manning. It was killed in Baker County near the station at Manning. * * * I saw the cow after it was killed. * * * This cow was of a dark brownish color, with white face."

On cross:

"I found the carcass of this cow about a hundred and fifty or something yards, or something like that—I never measured it—down below Manning station from the crossing going north; about a hundred and fifty yards north of the crossing at Manning station. Yes, she was lying in the middle of the railroad track. I saw her about nine or ten o'clock in the morning on the 14th of March, 1930. I remember the day. I don't understand you when you ask: 'Have you any means of now recalling over a year afterwards, the exact day on which that happened?' Yes, I am sure that was the date."

"I know what the man who was section foreman out there at that time said his name was; yes, Forbes. Yes, I reported the finding of this cow to Mr. Forbes and discussed it with him. He asked me whose was the cow's mark and I told him whose it was. Yes, I told him what the mark was; it was an underbit in each ear. This is all the marks she had. Yes, it was a brown cow; yes, she had some Holstein black and white spots on her. I would not call her a black cow; she was not a black cow. She was a darkish cow with a white face. That is all the white she had on her."

"Where I found the body of the cow was not near that switch; it was about half way from the switch to the depot. I would say it is about three hundred or three hundred and fifty yards from the depot to the switch, or something like that. I have not measured it."

"The cow I saw was in the middle of the track but not pretty near to the depot. It was about a hundred and twenty-five to a hundred and fifty yards. I don't know just how far, I never measured it, but it was much more than fifteen or twenty feet. And it was in the center of the track between the rails, in the center of the track directly it was."

"Yes, I sure did find that cow on the 14th of March. No, sir, I don't think that could have been the 4th of March; I know it was not—nor the 22nd of March."

The notice or claim served on the railroad company under the statute is as follows:

"As Attorney for Mr. D. W. Manning, I present this notice of his claim for the value of one cow killed by the engine and cars of the Atlantic Coast Line Railroad Company on or about March 22, 1930, between mile post 37-38, old posting, and of the value of $80.00.

"Kindly let me have remittance to cover, and oblige."

A witness for the defendant testified:

"I was the locomotive engineer on one of the Atlantic Coast Line trains running by the flag station of Manning on the 22nd of March of last year. I recall that my locomotive struck a cow at or near that station that morning. That was about six o'clock in the morning. * * * As I approached the station of Manning on this morning, I was running at a rate of speed of between thirty-five and forty miles per hour. That was not an unusual rate of speed; our regular schedule was thirty-five miles per hour. I was practically on time that morning, and was making no extra effort to increase my train's speed. * * *

"As I approached the station of Manning on this morning, and before this cow was struck—when about six hundred feet, I reckon, from the railroad crossing—from the road crossing south of the Manning depot—I looked across and saw a cow coming from behind the little depot at Manning, not more than fifteen or twenty feet behind it at the very outside. I blew the whistle and opened the cylinder cocks. and had the fireman ringing the bell, and tried to scare the cow away from there. It was approaching the railroad from behind the depot, and it was impossible to scare the cow away and it was impossible to stop the train to keep from killing the cow, provided I could have kept from it, as the distance was too short."

"My locomotive struck the cow at the time when she had her front feet in the middle of the track and her rear feet on the outside of the track. That was about fifteen feet north of the depot, just about. Yes, as I reached a point about five hundred or six hundred feet from the depot, I saw this cow coming from behind the depot." * * *

"The station grounds extend six hundred feet north and

south of the depot. The depot had been there ever since 1918, ten years, I reckon, or in that neighborhood. The north end of the depot is enclosed, as a house. It has a roof and four walls, doors and windows, and immediately south of that house an open platform extends.

"Immediately adjacent to that depot, just to the north and just to the south of it, a walkway has been graded up for passengers—that's what I am talking about; that is what I said had been there ten years. * * * Passengers are accustomed to get on and off the trains at that station. For the train going north, they get off at the south end, and from the train coming south they get off at the north end of the station. Other than taking transportation on the Atlantic Coast Line passenger trains, the public was accustomed to use that station at Manning in March, 1930, for the loading and unloading of freight—receiving freight from that platform or depot. It is correct that the purpose of the platform is a depot and freight depository. I, myself, as freight engineer, have taken up and deposited freight at that station. The depot and station grounds were maintained and operated by the Atlantic Coast Line Railroad for these purposes in March last year. * * *

"My train struck this cow just about twenty—not over fifteen or twenty—feet north of the depot, on the left rail, on the left-hand side. That point is one of the points at which we are accustomed to drop off and pick up passengers when running a passenger train there."

Defendant's section foreman testified:

"The date I found the body of that cow was the 22nd of March, 1930. I did not find the bodies of more than one cow on that date. It was about three o'clock in the afternoon, I found that body."

The plaintiff owned only one cow, and testimony for the

plaintiff showed his cow was killed March 14, 1930, while the declaration and the claim served on the defendant railroad company alleged plaintiff's cow was killed March 22, 1930. Defendant's testimony showed a cow entered upon the track and was killed by the train March 22, 1930, at a flag station where passengers and freight were handled. The declaration does not allege negligence of the defendant, but charges liability for failure to fence the railroad track. If plaintiff's cow was killed on March 22nd at a point where the defendant was not required to fence its track, it is not liable in double damages. A claim was not made for a cow killed by the train on March 14, 1930. Negligence of the defendant is not alleged as ground of liability for compensatory damages.

To recover double damages where stock is killed by trains where the track is not duly fenced, the statute must be followed. The claim by notice and declaration being for a cow killed on March 22, 1930, where the track should have been but was not fenced, the plaintiff is not entitled to double damages for non-payment of his claim under the statutes, upon proof that the carcass of his cow was found on the railroad track on March 14, 1930. See S. A. L. Ry. v. Grimes, 90 Fla. 38, 105 So. 142.

The statutory liability alleged has not been proven.

Reversed.

Davis, C. J., and Whitfield, Ellis, Terrell and Brown, J. J., concur.

Buford, J., concurs specially.

Buford, J. (concurring specially).—A writ of error here is to a judgment in favor of defendant in error against the plaintiff in error, the result of a suit to collect pay for a cow alleged to have been the property of plaintiff below and to have been killed by defendant below in the operation

of its train at a place where the railroad track was required by law to be fenced and was not fenced.

The judgment was for double damages and attorney's fees.

My opinion is that the evidence does not clearly show that a failure to comply with the legal requirements of the statutes as to fencing railroad tracks was the proximate cause of killing the cow so as to warrant recovery of double damages.

The record, as I read it, also shows that the circumstances surrounding the claim are such as to have reasonably raised in the minds of the legal representatives of the defendant a fair doubt as to the legality and justness of the claim as one to be paid without full investigation, including a judicial investigation, and, therefore, it appears to me it was the duty of the defendant to decline to pay this claim until it should be satisfied that it was a just claim for which it was legally liable, or until the justness and legality of the claim was established by judicial determination.

The record shows that plaintiff's cow was killed on March 14th, 1930, and was killed at a point of some considerable distance from a flag station known as Manning Station. About March 22nd another cow belonging to some person was evidently killed only a few feet from the station and the evidence fails to show that the railroad was negligent in not fencing its track at the place where the cow was killed about March 22nd. Mr. Manning filed a claim for his cow in which it was alleged that the cow was killed on or about March 22nd, 1930, between mileposts 37 and 38, old posting. It is shown that the station known as Manning Station was within this area and it is also shown by the locomotive engineer that the train which he was operating killed a cow at Manning Station on the 22nd day of March, 1930.

Therefore, it appears to me that the railroad received no notice of claim from the plaintiff which the railroad company could have reasonably construed to have been a claim for a cow killed on the 14th day of March, 1930, and certainly the railroad company was justified in the assumption that the notice received referred to that cow which was killed on March 22nd and which had been reported to the company by its agents and servants charged with the duty of making such reports.

This case is to be differentiated from that of Seaboard Air Line Railway Co. v. Maige, opinion filed March 23, 1933, and reported 109 Fla. 299, 147 So. 215. In that case the main question to be determined by the jury was whether or not the animal killed was killed at a place where the railroad was required to fence its track which was at a place near a flag station. In this case, not only was the question presented but the further question is presented as to whether or not the notice of claim presented to the railroad company referred to the cow which was killed on March 22nd, 1930, within a few steps of the flag station, or referred to a cow killed on the 14th day of March, 1930, at some further distance away from the flag station.

The whole record indicates that all parties proceeded upon the theory that the claim involved the killing of the cow on the 22nd day of March, 1930, until the trial was in progress when it developed that the cow belonging to the plaintiff, and for which he sought to recover damages, was killed on the 14th day of March, 1930.

Therefore, I think the judgment should be reversed on authority of opinion and judgment in the case of S. A. L. Ry. Co. v. Grimes, 90 Fla. 38, 105 Sou. 142, because of the uncertainty, as disclosed by the record, that the legal requirements of the statutes as to fencing railroad tracks was a proximate cause of the killing of the cow so as to warrant

recovery of double damages, and upon the authority of opinion and judgment in the case of A. C. L. R. R. Co. v. Wilson & Toomer Fertilizer Co., 89 Fla. 224, 104 Sou. 593, because the record shows that there was reason for the existence of a fair doubt as to the legality and justness of the claim as one to be paid without full investigation, including a judicial investigation.

ELLIS, J., concurs. 